IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| WHITE HALL ENTERTAINMENT, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CASE NO. 2:25-cv-939-RAH ) |
| STEVE MARSHALL, *in his Individual and Official Capacity as Attorney General of the State of Alabama,* | ) ) ) ) ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

**I.  INTRODUCTION**

Plaintiffs are six related entities (White Hall Entertainment) that own and operate an electronic bingo facility in White Hall, Alabama.  That facility has been the subject of two civil public nuisance lawsuits brought by the State of Alabama in the Circuit Court of Lowndes County, Alabama over the years, the second of which concluded with a permanent injunction, forfeiture of all seized property, and a final judgment that is now pending on appeal to the Alabama Supreme Court.  Two weeks after filing that state appeal, White Hall Entertainment filed this action under 42 U.S.C. § 1983 against Alabama Attorney General Steve Marshall, in both his official and individual capacities, asserting four constitutional claims that closely track the counterclaims White Hall Entertainment had raised—and then voluntarily withdrew weeks before trial—in the state court proceedings.  White Hall Entertainment seeks declaratory relief, injunctive relief, and monetary damages for alleged deprivation

of rights, privileges, and immunities secured by the First, Sixth, and Fourteenth Amendments to the United States Constitution.

Marshall has moved to dismiss the Complaint in its entirety. For the reasons that follow, the motion will be **GRANTED IN PART** and **DENIED IN PART**.

## II.   BACKGROUND

### A. Nature of the Action

Section 65 of the Constitution of the State of Alabama prohibits "lotteries," "gift enterprises," and "any scheme in the nature of a lottery." Ala. Const. art. IV § 65; Ala. Code § 13A-12-20, *et seq.* Under Alabama law, the elements of a prohibited "lottery" are (1) a prize, (2) awarded by chance, and (3) for consideration. *State v. $223,405.86, et al.,* 203 So. 3d 816 (Ala. 2016). This provision stands as a broad constitutional bar to slot machines and all other forms of gambling, including the game of bingo. *Id.*

Over the years, local constitutional amendments however have authorized bingo in various counties as narrow exceptions to Section 65. Ala. Const. amend. 674.  In 2000, Alabama citizens ratified Amendment No. 674, Ala. Const. 1901, which authorizes "[t]he operation of bingo games for prizes or money by nonprofit organizations for charitable, educational, or other lawful purposes" in the town of White Hall, Alabama. *Id.*

White Hall Entertainment operated an electronic bingo facility, purportedly pursuant to this amendment, in White Hall, Alabama. (Doc. 1 at 4.) It argues the facility was, until Marshall's litigation tactics, a vital community hub responsible for providing safe entertainment, social gathering space, and financial support for causes like public education. (*Id.* at 4–5.)

### B. The History of State Court Litigation

The current federal dispute is inextricably linked to over a decade of litigation in Alabama state courts regarding the scope of local bingo amendments. The

Alabama Supreme Court has held that these amendments must be narrowly construed and read consistently with one another. *Barber v. Cornerstone*, 42 So. 3d 65, 78 (Ala. 2009). Despite this, litigation aimed at preventing the State from enforcing gambling laws has been "extensive," resulting in over a dozen decisions by the Alabama Supreme Court. *State v. $223,405.86*, 203 So. 3d 816, 826, 836 (Ala. 2016).

In 2016, the Alabama Supreme Court expressed hope that its rulings would be the "last chapter" in attempts to defy the constitutional ban on gambling and the failure of local law enforcement to uphold state laws. *Id*. at 844 n. 19. It reiterated that the Alabama Attorney General, as the chief law enforcement officer in the state, possesses the authority and duty to enforce the criminal laws of the State when local officials fail to do so. *Id*. Facing "ongoing defiance," the Office of the Attorney General, through Steve Marshall, filed several civil nuisance actions starting in 2017 to shut down illegal gambling operations across various counties in Alabama, including Lowndes County. (Doc. 1 at 5–6.)

This enforcement strategy led to a series of significant appellate decisions. In *State v. Epic Tech, LLC*, 323 So. 3d 572 (Ala. 2020) ("Epic Tech I"), the Alabama Supreme Court reversed the dismissal of several nuisance actions, noting that the "myriad of decisions dealing with the legality of electronic bingo machines" supported the State's claim that traditional criminal law remedies were inadequate to abate these public nuisances. *Id*. Subsequent rulings in *State v. Epic Tech, LLC*, 342 So. 3d 200 (Ala. 2021) ("Epic Tech II"), and *State v. Epic Tech, LLC*, 373 So. 3d 809 (Ala. 2022) ("Epic Tech III"), further solidified the State's ability to pursue these strategies through equitable remedies. *Id*. Eventually, in the *Epic Tech* litigation, the Circuit Court of Lowndes County, Alabama was directed to enter a permanent injunction enjoining the local defendants from offering "electronic bingo" machines. *State v. Epic Tech*, 378 So. 3d 467, 487 (Ala. 2022).

Critical to White Hall Entertainment's current claims is how the Alabama Supreme Court developed the public nuisance per se theory. White Hall Entertainment argues that this doctrine traces its roots to *Barber v. Cornerstone Community Outreach, Inc.*, 42 So. 3d 65 (Ala. 2009), where the Alabama Supreme Court defined the six required elements of "bingo" and held that electronic bingo machines, by virtue of not meeting those criteria, are illegal lotteries under Alabama law. (Doc. 20-1 at 8.) White Hall Entertainment contends that the Alabama Supreme Court effectively created a "nuisance per se" rule by extending the "facts and laws" of the Depression-era precedent of *Try-Me Bottling Co. v. State*, 178 So. 231, 238 (1938), to modern electronic-bingo operations. (Doc. 20-1 at 8–9.) While Marshall correctly notes that *Barber* itself was not a public nuisance action and did not reference *Try-Me Bottling Co.* (doc. 24 at 11 n.1), the record confirms that this is precisely the position the State has successfully advanced in recent litigation. *See State v. Epic Tech, LLC*, 378 So. 3d 467, 480 (Ala. 2022) (finding that "[t]he State further argues that, under this Court's decision in *Try-Me Bottling Co.* . . . the 'ongoing criminal activity at the [defendants'] facilities in [each] County is a per se nuisance under Alabama law.' We agree." (bracketed alterations in original)).

The impact of this legal theory is illustrated by a prior 2017 nuisance action brought by the State against the very same facility at issue here. (Doc. 20-1 at 14.) According to White Hall Entertainment, following a bench trial in that case, the Circuit Court of Lowndes County initially found that the White Hall operation was not a public nuisance, specifically noting the absence of violence, disturbances, or traditional indicia of a nuisance, as well as the operation's benefits to the community. (*Id.*) The Alabama Supreme Court reversed that judgment on appeal, relying on the *Try-Me Bottling* nuisance per se theory to reclassify the operation as a nuisance notwithstanding the circuit court's factual findings. (*Id.*) White Hall Entertainment now challenges the continued use of this civil framework, which it argues allows

Marshall to bypass the procedural safeguards and jury-trial rights inherent in the criminal justice system. (Doc. 1 at 7–8; doc. 20-1 at 12.)

**C. The 2023 Parallel Action and the Instant Federal Complaint**

The current dispute was precipitated by Marshall's filing of a civil public nuisance lawsuit against White Hall Entertainment in the Circuit Court of Lowndes County on November 29, 2023.  In that case, styled *State of Alabama v. White Hall Entertainment, et al*., Case No. 45-CV-2023-900051, the State alleged that White Hall Entertainment's electronic bingo operations constituted a public nuisance and it sought to abate the operations while forfeiting all associated machines, records, and currency. (Doc. 20-1 at 10.) White Hall Entertainment contends that by proceeding under a civil temporary restraining order and search warrant rather than the criminal gaming framework established in Alabama Code § 13A-12-27, Marshall deliberately bypassed the procedural safeguards and jury-trial rights that would attend a criminal prosecution. (Doc. 1 at 7–8; doc. 20-1 at 12.)

The procedural history of the state litigation is central to the current jurisdictional posture of this case. In the Lowndes County action, White Hall Entertainment initially asserted federal and constitutional counterclaims, including claims under 42 U.S.C. § 1983 and the Americans with Disabilities Act of 1901, 42 U.S.C. § 12101. (*See* doc. 20-1 at 15; *see also* doc. 14-8 at 3–8.) However, on September 1, 2025, prior to the bench trial, White Hall Entertainment filed a "Notice of the Withdrawal of Certain Pleadings and/or Matters Pled," wherein it withdrew all affirmative defenses and constitutional counterclaims while "expressly reserv[ing] all rights, claims, and defenses available to them under the law." (Doc. 20-1 at 10–11, 15.) The state court granted this withdrawal on September 4, 2025, and subsequently held a bench trial limited to state law questions regarding the nature of the seized machines. (Doc. 20-1 at 11, 16.)

On October 10, 2025, the Circuit Court of Lowndes County entered an order and final judgment in favor of the State, declaring the White Hall facility a public nuisance and ordering the forfeiture of seized assets. (*Id*. at 11.) While an appeal of that judgment remains pending before the Alabama Supreme Court, White Hall Entertainment argues that the appeal is confined to state law issues, as its federal constitutional claims were never adjudicated on the merits. (*Id*. at 11, 16.)

Shortly thereafter, White Hall Entertainment initiated this action in the Middle District of Alabama against Marshall in his official and individual capacities. (Doc. 1 at 1.)  The Complaint enumerates four causes of action:

Count I alleges a violation of the Sixth and Fourteenth Amendments, asserting that Marshall's use of civil nuisance law is a pretext to deprive White Hall Entertainment of its fundamental right to a trial by jury for conduct that is substantially criminal in nature.

Count II alleges violations of Procedural and Substantive Due Process under the Fourteenth Amendment, claiming the seizure of property occurred without a meaningful hearing and that the policy constitutes an arbitrary and capricious "executive override" of the Alabama Legislature's specific criminal gaming statutes.

Count III alleges a violation of the Equal Protection Clause of the Fourteenth Amendment, asserting that Marshall has engaged in selective and arbitrary enforcement of these laws without a rational basis.

Count IV alleges a violation of the First Amendment, contending that the closure of the White Hall facility unconstitutionally burdens the community's rights to assembly and association.

(Doc. 1 at 7–11.)

In terms of relief, White Hall Entertainment seeks compensatory and punitive damages against Marshall in his individual capacity, alongside a declaratory

judgment and a permanent injunction prohibiting the prospective use by Marshall of civil nuisance statutes to enforce lottery prohibitions against White Hall Entertainment. (*Id*. at 11–13.)

Marshall has moved to dismiss under Rules 12(b)(1) and (b)(6), arguing that the Complaint fails to state a claim upon which relief can be granted, that White Hall Entertainment's claims are barred under Alabama's compulsory counterclaim rule and res judicata, that Marshall is entitled to various forms of immunity, and that the *Younger* abstention doctrine requires this Court to refrain from interfering with ongoing state litigation. (Doc. 14 at 3–4.)

### III.  LEGAL STANDARD

#### A. Rule 12(b)(1)

A motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) may take the form of either a facial or a factual attack. *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). On a facial attack, the Court accepts the allegations in the complaint as true to determine if the plaintiff has sufficiently alleged a basis for jurisdiction. *Id.* In a factual attack, the Court may consider extrinsic evidence, such as affidavits or testimony, to challenge the actual existence of jurisdiction. *Id.* at 1233.

#### B. Rule 12(b)(6)

In deciding a Rule 12(b)(6) motion, the Court considers only the allegations contained in the complaint and any attached exhibits. *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016). A Rule 12(b)(6) motion tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. This standard does not require detailed factual allegations, but it demands more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient. *Twombly*, 550 U.S. at 555.

## IV.  DISCUSSION

### A. Jurisdiction

The Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the claims arise under the Constitution and laws of the United States. Furthermore, venue is proper in the Middle District of Alabama under 28 U.S.C. § 1391(b), as a substantial portion of the events giving rise to these claims occurred in this District and the property at issue is situated here.

### B. *Younger* Abstention

The heart of Marshall's motion lies in the *Younger* abstention doctrine, which prohibits federal courts from enjoining or otherwise interfering with ongoing state judicial proceedings. *Younger v. Harris*, 401 U.S. 37 (1971). Generally, federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given to them. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). However, *Younger* represents a narrow exception grounded in the "desire to permit state courts to try state cases free from interference by federal courts." *Younger*, 401 U.S. at 43; *see also Sprint,* 571 U.S. at 77.

The Supreme Court has made clear that *Younger* abstention is limited to three "exceptional" categories: (1) "state criminal prosecutions"; (2) "civil enforcement

8

proceedings"; and (3) "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint*, 571 U.S. at 73 (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 367–68 (1989)).

The Lowndes County nuisance action falls squarely within the second *Sprint* category. For example, in *Huffman v. Pursue, Ltd.*, the Supreme Court held that *Younger* applied to a state-initiated civil nuisance proceeding used to close an adult theater, noting that such proceedings are "akin to a criminal prosecution" because they are brought by the state in its sovereign capacity to sanction violations of state law and to protect public interests. 420 U.S. 592, 604 (1975). The nuisance action at issue here serves the same enforcement function and likewise is "quasi-criminal" as described in *Sprint*. 571 U.S. at 81.

## 1. The *Middlesex* Factors Are Satisfied

To determine the propriety of abstention within a *Sprint* category, the Court looks to whether: (1) there is an ongoing state judicial proceeding; (2) the proceeding implicates important state interests; and (3) the state forum provides an adequate opportunity to raise constitutional challenges. *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982); *see also For Your Eyes Alone, Inc. v. City of Columbus, Ga.*, 281 F.3d 1209, 1217 (11th Cir. 2002).

First, the state proceeding is ongoing. Although the trial has concluded, the defendants in the Lowndes County case–including White Hall Entertainment, a plaintiff here–have filed an appeal that remains pending before the Alabama Supreme Court. (Doc. 20-1 at 5.) For *Younger* purposes, a party must "exhaust his state appellate remedies before seeking relief in the District Court." *Huffman*, 420 U.S. at 608.[1]

---

[1] As the Supreme Court later explained:

Second, there is no dispute that Alabama's interest in regulating gambling and enforcing its nuisance laws is an important state interest. (*See* doc. 20-1 at 30.)

The parties' primary dispute concerns the third *Middlesex* factor: whether the state forum provides an adequate opportunity for White Hall Entertainment to raise its constitutional challenges. The burden is on White Hall Entertainment to establish that the state proceedings do not provide an adequate remedy for its federal claims. *Butler v. Ala. Judicial Inquiry Comm'n*, 261 F.3d 1154, 1159 (11th Cir. 2001). White Hall Entertainment contends that the Alabama Supreme Court is "structurally incapable" of providing relief on "distinct federal claims that are not before the state appellate court." (Doc. 20-1 at 31.) Additionally, it suggests that the state forum is not the "appropriate place" to test these challenges because the Alabama Supreme Court has already "insulated" Marshall's conduct through the adoption of the "nuisance-per-se doctrine." (*Id*. at 9–10; *cf*. doc 24 at 13.)

These arguments are unavailing. Under Eleventh Circuit precedent, the relevant inquiry is not whether a plaintiff will succeed on the merits of their constitutional claims in state court, but whether they are "procedurally prevented from raising" them. *Pompey v. Broward Cnty.*, 95 F.3d 1543, 1551 (11th Cir. 1996); *see also Juidice v. Vail*, 430 U.S. 327, 337 (1977) (explaining that plaintiffs "need be accorded only an opportunity to fairly pursue their constitutional claims in the

---

When, in a proceeding to which *Younger* applies, a state trial court has entered judgment, the losing party cannot, of course, pursue equitable remedies in federal district court while concurrently challenging the trial court's judgment on appeal. For *Younger* purposes, the State's trial-and-appeals process is treated as a unitary system, and for a federal court to disrupt its integrity by intervening in mid-process would demonstrate a lack of respect for the State as sovereign. For the same reason, a party may not procure federal intervention by terminating the state judicial process prematurely—forgoing the state appeal to attack the trial court's judgment in federal court.

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368–69 (1989).

10

ongoing state proceedings, and their failure to avail themselves of such opportunities does not mean that the state procedures were inadequate" (citation omitted)). White Hall Entertainment cannot demonstrate such a procedural bar; on the contrary, the record reflects that White Hall Entertainment asserted these federal constitutional challenges in the Lowndes County proceeding before choosing to voluntarily withdraw them. (Doc. 14-8; doc. 14-11.) Further, where a party "can point to no feature of Alabama procedural law that prohibits it from attempting to persuade the Alabama Supreme Court to reexamine its decisions . . . or from pressing constitutional arguments that [previous] cases did not address," the party cannot be said to have an inadequate avenue to press its federal constitutional claims in the state proceedings. *Old Republic Union Ins. Co. v. Tillis Trucking Co., Inc.*, 124 F.3d 1258, 1262 (11th Cir. 1997).

Furthermore, White Hall Entertainment's objection to the nuisance per se doctrine itself cannot defeat abstention. Whether the operation of electronic bingo machines constitutes a public nuisance per se is a matter of Alabama law and states possess broad authority under their police powers to declare certain activities public nuisances and to provide for their abatement. *See Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 488–506 (1987); *see also Mugler v. Kansas,* 123 U.S. 623, 668–69 (1887). White Hall Entertainment nonetheless suggests that pursuing state appellate review would have been futile because the Alabama Supreme Court has already adopted a legal theory unfavorable to their position.

The Supreme Court rejected a nearly identical argument in *Huffman*, 420 U.S. 592. There, the appellee argued that state appellate review was unnecessary because a prior decision of the Ohio Supreme Court had already upheld the use of the state's nuisance statute as-applied in another case. The Supreme Court was unpersuaded, explaining that the earlier state decision did not actually resolve the federal

11

constitutional question the appellee wished to raise and therefore provided no basis for assuming that appellate review would be futile. *Id*. at 610.

More fundamentally, the Supreme Court has emphasized that "the considerations of comity and federalism which underlie *Younger* permit no truncation of the exhaustion requirement merely because the losing part . . . believes that his chances of success on appeal are not auspicious." *Huffman*, 420 U.S. at 610–11 (1975). Accepting White Hall Entertainment's position would rest on the impermissible assumption that state courts will not faithfully apply federal law—an assumption the Supreme Court has expressly rejected. *Id*. at 61; *see also Middlesex*, 457 U.S. at 431.

White Hall Entertainment's further contention that the state proceeding is inadequate because "Marshall is not a party to that appeal" is unavailing. (Doc. 20-1 at 30.) The Supreme Court has recognized that *Younger* considerations apply to "legally distinct parties," *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 928 (1975), whose interests are nevertheless sufficiently "intertwined" with those of the state-court defendants, *Hicks v. Miranda*, 422 U.S. 332, 348–49 (1975). Here, the state enforcement action was brought in the name of the State, while this action names Marshall, the Attorney General and chief law enforcement officer in the State, in both his official and personal capacities. An official-capacity claim is, in substance, a claim against the State itself. *See Lozman v. City of Riviera Beach, Fla.,* 713 F.3d 1066, 1075 n.7 (11th Cir. 2013) ("Generally, a government official sued in his or her official capacity is considered to be in privity with the government . . . ."). And Marshall's alleged conduct arises directly from the same enforcement action challenged in the state proceedings through his office; the alignment of interests

between the State and Marshall therefore eliminates any structural impediment to the presentation of White Hall Entertainment's federal claims in the state forum.[2]

## 2. Federal Interference with State Proceedings

For a state proceeding which falls into one of the three "exceptional" *Sprint* categories and meets the three *Middlesex* factors, the Court "may and should withhold equitable relief to avoid interference with state proceedings." *31 Foster Children v. Bush*, 329 F.3d. 1255, 1274 (11th Cir. 2003). The Supreme Court has long recognized that federal equitable relief is improper when it operates, either directly or indirectly, to restrain the course of a pending state judicial proceeding. *See Samuels v. Mackell*, 401 U.S. 66, 72 (1971). Accordingly, the Supreme Court has held that *Younger* abstention applies to requests for declaratory relief because "ordinarily a declaratory judgment will result in precisely the same interference with and disruption of state proceedings that the longstanding policy limiting injunctions was designed to avoid." *Id*.

The same principles of comity and federalism govern the treatment of legal claims that would require a federal court to resolve constitutional questions at the core of a pending state proceeding. Although claims for damages cannot ordinarily be dismissed under *Younger*, federal courts must refrain from adjudicating them when doing so would effectively decide issues being litigated in the state forum; in such circumstances, the proper course is to stay the federal damages claims pending the conclusion of the state proceedings. *Deakins v. Monaghan*, 484 U.S. 193, 202–03 (1988). This approach reflects the principle that federal courts may defer

---

[2] The adequacy inquiry focuses on whether the federal plaintiff has an opportunity to raise constitutional challenges in the state proceeding, not whether the state forum provides every form of relief sought in federal court. *See* discussion *infra* Part IV.B.2.

adjudication of actions at law to avoid interference with state judicial processes. *See Quackenbush v. Allstate Insurance Co.*, 517 U.S. 706, 719–20 (1996).

These principles compel abstention here despite White Hall Entertainment's contention that it seeks to adjudicate "distinct federal claims that are not before the state appellate court." (Doc. 20-1 at 31.) The relevant inquiry is not whether the specific causes of action are currently being litigated in state court, but whether the federal court's resolution of those claims would effectively decide issues being litigated in the state forum. *See 31 Foster Children*, 329 F.3d at 1276 (explaining that abstention is required where federal relief would "indirectly accomplish" interference with ongoing state proceedings (quoting *O'Shea v. Littleton*, 414 U.S. 488, 500 (1974))).

Adjudication of any of the four counts in White Hall Entertainment's Complaint would necessitate such interference. To award damages under Count I, this Court would have to determine that the state's civil nuisance framework is being utilized to impose punitive sanctions without the required constitutional procedural safeguards, resulting in a federal judgment that the state forum is constitutionally inadequate to adjudicate the dispute. Regarding Count II, a federal finding that Marshall's initiation of the suit was an *ultra vires* act would create a preclusive determination that the state court is entertaining a prosecution brought without lawful authorization, which would effectively nullify the state court's exercise of jurisdiction. Similarly, a finding of discriminatory enforcement under Count III would require this Court to conclude that the State, through Marshall's office, lacked a rational basis for the underlying litigation, a determination that would cast a negative light on the state court's ability to ensure the equal protection of its laws. Finally, awarding damages for the closure of the White Hall facility per Count IV would require a finding that the state court's remedial objective—the abatement of the alleged nuisance—constitutes an unconstitutional burden on protected

14

expressive association. In each instance, a federal judgment in favor of White Hall Entertainment would "result in precisely the same interference with and disruption of state proceedings that the longstanding [*Younger*] policy limiting injunctions was designed to avoid." *Samuels*, 401 U.S. at 72.[3]

### 3. The Inapplicability of the Narrow Exceptions to *Younger* Abstention

Finally, to the extent White Hall Entertainment's allegations regarding Marshall's enforcement policy could be construed as invoking the bad-faith or harassment exception to *Younger* abstention, that argument fails. The exception is "narrow" and applies only in extraordinary circumstances. *Younger*, 401 U.S. at 53–54. To qualify, a plaintiff must show that the state proceeding was initiated in bad faith or with an intent to harass, or that the challenged law is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph . . . ." *Id.* (quoting *Watson v. Buck*, 313 U.S. 387, 402 (1941)). While White Hall Entertainment characterizes Marshall's reliance on nuisance per se as an "executive override" of legislative intent, (doc. 1 at 14), the mere pursuit of a novel or aggressive legal strategy in state court does not constitute the type of "flagrant and patent unconstitutionality" required to trigger an exception to *Younger*. *Huffman*, 420 U.S. at 592, 611 (refusing to find bad faith where the state court had a viable theory under state law).

Likewise, White Hall Entertainment's conclusory allegation of "race-based selective enforcement" is unsubstantiated by the current record and is directly

---

[3] The Court likewise declines to reach the merits of Marshall's qualified immunity defense at this stage. Analysis of whether a constitutional right was violated—the necessary first prong of the qualified immunity inquiry—would require this Court to pass judgment on the very constitutional claims currently pending in the state appellate court. *See Lewis v. City of West Palm Beach, Fla.*, 461 F.3d 1288, 1291 (11th Cir. 2009). Such an adjudication would create the same "intrusion as a declaratory judgment" that *Younger* and *Samuels* seek to prevent. *See Herrera v. City of Palmdale*, 918 F.3d 1037, 1048 (9th Cir. 2019).

contested by Marshall.[4] (Doc. 20-1 at 37.) Because such a claim necessarily "requires further factual inquiry[, it] can hardly be deemed 'flagrantly' unlawful for purposes of a threshold abstention determination." *New Orleans Pub. Serv., Inc.,* 491 U.S. at 367. In sum, White Hall Entertainment has failed to show that state procedures regarding the official claims are inadequate. *See Butler*, 261 F.3d at 1160.

* * *

Because the appeal to the Alabama Supreme Court constitutes an ongoing quasi-criminal proceeding and provides an adequate forum for the adjudication of federal rights, and because granting the requested relief would effectively enjoin or otherwise disrupt those state proceedings, the Court must abstain. The form of that abstention, however, is dictated by the relief sought. For the equitable claims, the requested declaratory judgment, and permanent injunction, dismissal is the appropriate course. *See Juidice*, 430 U.S. at 337 (holding that where there are adequate state procedures, "the principles which underlie *Younger* call for dismissal of that action"). As the Supreme Court has noted, where a case involves "equitable or discretionary relief, a district court may . . . decline to exercise jurisdiction altogether by dismissing the suit." *Quackenbush*, 517 U.S. at 721. Because a federal ruling on the constitutionality of the State's enforcement policy would "result in precisely the same interference . . . that the longstanding policy limiting injunctions was designed to avoid," these claims are due to be dismissed. *Samuels*, 401 U.S. at 72.

Conversely, the Court lacks the discretion to dismiss the claims for monetary damages. While these legal claims are also subject to abstention because they turn

---

[4] While the Complaint asserts that Marshall's enforcement efforts have been "selectively and disparately applied" in majority-African American counties (doc. 1 at 6), White Hall Entertainment fails to rebut Marshall's observation that identical nuisance actions have been initiated in other jurisdictions, such as majority-white Houston County. (Doc. 14 at 41; doc. 24 at 10.)

on the same core constitutional issues pending in the state appeal, the proper course is to stay those claims rather than dismiss them. *Deakins*, 484 U.S. at 202, 209 (White, J., concurring) (noting that "in light of . . . [the Supreme Court's] decisions in *Younger* and *Samuels*, it is clear that [a] District Court should not dismiss the damages claims, yet must not proceed to judgment on them either."). This approach protects White Hall Entertainment's ability to pursue damages—a form of relief perhaps unavailable in the state nuisance action—following the conclusion of the state litigation, while avoiding immediate interference with the state's judicial process. *See id.* at 202–03.[5]

## V.   CONCLUSION

In accordance with the foregoing, it is **ORDERED** as follows:

1. Defendant Steve Marshall's Motion to Dismiss (doc. 14) is **GRANTED IN PART** as to Plaintiffs' claim for declaratory and injunctive relief. Accordingly, those claims are **DISMISSED** pursuant to *Younger*;

2. Defendant Steve Marshall's Motion to Dismiss (doc. 14) is **DENIED IN PART** to the extent it seeks dismissal of Plaintiffs' claims for monetary damages against Steve Marshall in his individual capacity;

---

[5] The Court finds it premature to resolve the issue of absolute prosecutorial immunity. *Contra Nivens v. Gilchrist*, 444 F.3d 237, 248–50 (4th Cir. 2006) (affirming dismissal on prosecutorial immunity grounds notwithstanding *Younger*). Under the "functional approach," absolute immunity is reserved for acts "intimately associated with the judicial phase," while administrative or investigative functions receive only qualified immunity. *See Jones v. Cannon*, 174 F.3d 1271, 1281–82 (11th Cir. 1999) (citations omitted). Determining whether Marshall's pursuit of a civil nuisance policy to address electronic gambling in this case—as opposed to criminal prosecution—constitutes a protected advocacy function or a quasi-legislative or administrative policy choice requires a fact-intensive inquiry. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 273–78 (1993). At a minimum, such an inquiry is inappropriate at the dismissal stage where the Court has already determined that a stay is necessary; moreover, resolving this functional distinction would require findings regarding the nature and scope of Marshall's enforcement authority—issues that are tied to the underlying state litigation—and proceeding further would likely risk the very federal interference with state judicial processes that *Younger* forbids.

17

3. Plaintiffs' claims for monetary damages against Steve Marshall in his individual capacity are **STAYED** pending the final resolution of the ongoing state court proceedings;

4. The parties are **DIRECTED** to file a joint status report on or by **July 1, 2026**, and every ninety (90) days thereafter, concerning the status of *State of Alabama v. White Hall Entertainment, et al.*, Case No. 45-CV-2023-900051, pending in the Circuit Court of Lowndes County, Alabama;

5. The Clerk of Court is **DIRECTED** to administratively close this case; and,

6. The parties may move to reopen the case within thirty (30) days of a final decision by the Circuit Court of Lowndes County in *State of Alabama v. White Hall Entertainment, et al.*, Case No. 45-CV-2023-900051.[6]

**DONE** on this the 31st day of March 2026.

R. AUSTIN HUFFAKER, JR.
CHIEF UNITED STATES DISTRICT JUDGE

---

[6] Because the Court abstains under *Younger*, it declines to address Marshall's alternative grounds for dismissal, including the contention that the Complaint constitutes an impermissible "shotgun pleading." (Doc. 14 at 13–15.) The Court notes, however, that the Complaint—which repeatedly "incorporates by reference all preceding paragraphs" into each count—appears to fall into at least one of the categories of shotgun pleadings long condemned by the Eleventh Circuit. *See Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015). Should the stay be lifted, Plaintiffs should expect to be required to file an amended complaint that complies with Federal Rules of Civil Procedure 8(a)(2) and 10(b) before the case proceeds.